Below is an opinion of the court.

_____
DAVID W. HERCHER
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br>**Daryan Lewis**,<br>　　　　　Debtor. | Case No. 21-32156-dwh7 |
| **United States Trustee,**<br>　　　　　Plaintiff,<br>　v.<br>**Deighan Law LLC** and **John "JR" Perkins**,<br>　　　　　Defendants. | Adversary Proceeding<br>No. 22-03032-dwh<br><br>MEMORANDUM DECISION ON DEFENDANTS' MOTION TO DISMISS CLAIMS 2 THROUGH 4 |

### I. Introduction[1]

Defendants have moved to dismiss second through fourth claims for relief

in the complaint by Gregory M. Garvin, Acting United States Trustee for

---

[1] This disposition is specific to this case. It may be cited for whatever persuasive value it may have.

Page 1 – MEMORANDUM DECISION ON DEFENDANTS' MOTION etc.

Region 18.² For the reasons that follow, I will deny the motion as to the second claim but grant it as to the third and fourth claims.

## II. Statutes and civil procedure rules

### A. *Statutes*

Section 526(a) of title 11, U.S. Code, regulates debt-relief agencies. Section 526(a)(1) prohibits a debt-relief agency from "fail[ing] to perform any service that such agency informed an assisted person or prospective assisted person it would provide in connection with a case or proceeding." And section 526(a)(3) prohibits an agency from misrepresenting "directly or indirectly, affirmatively or by material omission, with respect to . . . the services that such agency will provide to such person."

Under section 526(c)(5), if a person intentionally violates section 526 or engages in a clear and consistent pattern or practice of violating the section, the court may at the request of the U.S. trustee enjoin the violation or impose an appropriate civil penalty against the person.

Defendant Deighan Law LLC, a law firm, does business in Oregon as UpRight Law LLC. For the motion, the firm does not dispute that it is a debt-relief agency and a person, and debtor, Daryan Lewis, is an assisted person.

### B. *Rules*

The motion invokes Federal Rules of Civil Procedure 12(b)(6), 8, and 9(b).

---

² ECF No. 8 (motion).

Page 2 – MEMORANDUM DECISION ON DEFENDANTS' MOTION etc.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Under the Supreme Court's 2007 decision in *Bell Atlantic Corporation v. Twombly*[3] and its 2009 decision in *Ashcroft v. Iqbal*,[4] a complaint must, to survive a motion to dismiss, contain factual allegations that, if true, state a claim that on its face is plausible.[5] A claim is facially plausible when it pleads facts allowing the court to draw the reasonable inference that the plaintiff is entitled to the requested relief.[6] An allegation that is "merely consistent with a defendant's liability"[7] or that is "mere[ly] conclusory"[8] is not plausible. In determining whether a complaint's explanation for a defendant's alleged action is plausible, the court may consider an "obvious alternative explanation" as a reason to find the complaint's explanation not to be feasible.[9]

If a claim is based on "fraud or mistake," Rule 9(b) requires that the complaint "state with particularity the circumstances"—not including the defendant's state of mind—"constituting fraud or mistake."

---

[3] 550 U.S. 544, 570 (2007).
[4] 556 U.S. 662, 678 (2009).
[5] *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 570.
[6] *Iqbal*, 556 at 678; *Twombly*, 550 U.S. at 556.
[7] *Iqbal*, 556 at 678.
[8] *Iqbal*, 556 at 664; *Twombly*, 550 U.S. at 555.
[9] *Iqbal*, 556 U.S. at 682; *Twombly*, 550 U.S. at 567.

Under Rule 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded allegations as true.[10] A court is not bound by conclusory statements, statements of law, or unwarranted inferences cast as factual allegations.[11]

III.  **Facts**

The following facts and those otherwise described in this decision are based on the complaint's allegations.

Lewis hired the firm by signing a flat-fee agreement on September 27, 2017.[12] The firm agreed, among other things, to—

- "immediately" begin work on her case,[13]

- file her petition "as soon as your payment plan is completed,"[14] and

- be available by phone at specified hours and by email to speak to her.[15]

Exhibit 1 to the complaint is 10 pages long, and its first page is headed "Retainer Agreement." As the firm correctly notes, without contradiction from the U.S. trustee, the U.S. trustee misquotes language on the first page of Exhibit 1 by converting the tense of the quoted statements from present to future:

- from "we fight for you" to "we **will** fight or you";

---

[10] Johnson v. Riverside Healthcare System, LP, 534 F.3d 1116, 1122 (9th Cir.2008).
[11] *Twombly*, 550 U.S. at 555–57.
[12] ECF No. 1 (complaint) ¶ 13, Ex. 1.
[13] Complaint ¶ 15.b.
[14] Complaint ¶ 15.b.
[15] Complaint ¶ 15.c.

Page 4 – MEMORANDUM DECISION ON DEFENDANTS' MOTION etc.

- from "we start work immediately" to "we **will** start work immediately"; and
- from "we are always available for you" to "we **will** always **be** available to you."

But the firm's defense of the motion does not rely on those misquotations.

The firm agreed to refund any unearned portion of the fee if Lewis cancels the agreement.[16] She completed the fee payment on November 14, 2018.[17] Defendant John Perkins, the lawyer the firm initially assigned to work for her, did not contact her, including by responding to her phone calls to him, at any time after she completed her payments.[18] Through June 2021, she repeatedly notified the firm that he was not responding to her phone calls.[19] She requested that the firm refund the fee she had paid, but the firm refused.[20]

In the summer of 2020, nearly two years after Lewis had finished paying the firm, she learned that her wages would be garnished by a judgment creditor.[21] She notified both Perkins and the firm about the impending garnishment and again requested reassignment to a different lawyer.[22] On September 3, 2020, the creditor obtained a writ of garnishment and garnished her wages from September 2020 through March 2021 until it had

---

[16] Complaint ¶ 13, Ex. 1 at 3.
[17] Complaint ¶ 17.
[18] Complaint ¶¶ 18, 19.
[19] Complaint ¶ 19.
[20] Complaint ¶ 21.
[21] Complaint ¶ 22.
[22] Complaint ¶ 23.

Page 5 – MEMORANDUM DECISION ON DEFENDANTS' MOTION etc.

recovered the full amount of the judgment, $4,288.95 plus interest of 27.9 percent per year. The garnishment wage deductions averaged between $180 and $220 per week.[23] Neither the firm nor Perkins took any action in response to notice of the impending garnishment before the entire judgment had been garnished.[24]

In June 2021, the firm reassigned Lewis's file to a different lawyer, who did contact Lewis and prepared and filed the bankruptcy documents on October 22, 2021.[25]

## IV. Analysis

### A. *Second claim: violations of section 526*

The second claim seeks a civil penalty for violating section 526(a)(1) and (3). It appears to sound only against the firm.

#### 1. Section 526(a)(1)

The firm first argues that the allegations that it failed to perform services "perhaps show that UpRight's services fell short of the Debtor's expectations, [but] do not constitute a total failure to provide services . . . ."[26]

I disagree with the firm's argument that only a "total failure to provide services" would violate section 526(a)(1). That section bars an agency from "fail[ing] to perform any service that" the agency informed the debtor that it would perform. An agency violates that section by failing to perform any

---

[23] Complaint ¶ 24.
[24] Complaint ¶ 23.
[25] Complaint ¶ 25.
[26] ECF No. 8 (motion) at 3.

particular service that it said it would perform, even if it performs other services it said it would perform. And an agency fails to perform a service that it said it would perform if it fails to perform the service in the way that it said it would. An agency can't comply with section 526(a)(1) by performing a service in a way materially different than how it said it would perform the service.

Here, the complaint clearly alleges that the firm failed to do several things that it said it would do, or at least it failed to do things in the way that it said it would.

- The firm promised to begin preparation of Lewis's case "immediately" but in fact made no progress for over two years after she had paid her fee. Whatever immediately means, it surely means sooner than after a delay of two years—and that the firm would at least take advantage of her notification of the impending garnishment to file the petition before the garnishment began to save her from having to pay the judgment in full.

- The firm promised to be available to speak with Lewis from 7 a.m. to 8 p.m. or by email. But she repeatedly contacted the firm during the next two years to report that Perkins was not responding to her phone calls.

- The firm promised that, if Lewis canceled the agreement, it would refund the unearned portion of the fee that she paid. Because the firm had not contacted her to demonstrate that it had taken any steps to prepare to file her petition when she requested a refund, it seems unlikely that it could then claim to have earned any portion of the fee, but in any case, it had not earned the entire fee, which would be the only contractual justification for refusing to give her any refund.

If these allegations are true, they show not that the firm performed poorly, but that it entirely failed to perform specific promises, at least in the manner that it said it would.

Page 7 – MEMORANDUM DECISION ON DEFENDANTS' MOTION etc.

The complaint sufficiently alleges that the firm violated section 526(a)(1).

The firm cites my 2018 decision in *United States Trustee v. Howard (In re Stites)*[27] for the proposition that sluggish or otherwise poor performance by a debt-relief agency is not the same thing as failure to perform. Unlike the posture of this action, where I am considering the legal sufficiency of the U.S. trustee's section 526(a) allegations, my decision in *Stites* was after trial and addressed the sufficiency of the evidence. There, I found insufficient evidence to support allegations that the agency failed to provide promised services—including the promise to do so timely.[28]

I acknowledged in *Stites* that, "by analogy to contract law, there must be some point at which a delay in the provision of services crosses the line into a total failure to provide services."[29] That statement is certainly correct where, as is alleged to have happened here, the promised services include an express undertaking to begin work "immediately" and to file the bankruptcy case "[a]s soon as your payment plan is completed[.]" An agency that promises to do those things and then does absolutely nothing for two years—which is a fair summary of what the U.S. trustee alleges the firm did—"crosses the line into a total failure to provide services" as promised. Of course, it remains to be seen whether these allegations are true, but they are enough to state a claim.

---

[27] No. 14-35071-dwh7, 2018 WL 1267837 (Bankr. D. Or. Mar. 9, 2018).
[28] *Stites*, 2018 WL 1267837, at *17.
[29] *Id.* at *16.

Page 8 – MEMORANDUM DECISION ON DEFENDANTS' MOTION etc.

## 2. Section 526(a)(3)

The firm argues that the complaint's misrepresentation allegation fails the pleading standards in both Rules 8 and 9(b).[30]

The firm argues that the complaint's misrepresentation allegation is deficient because it does not allege that, when the firm represented the services that it would perform, it knew that it would not do so and intended to deceive Lewis.[31] As authority for that argument, the firm relies on a dictionary definition of misrepresentation to include intent to deceive and a footnote in a dissenting opinion in a case interpreting a statute criminalizing a false representation.[32] The other cases cited by the firm also address misrepresentation in contexts other than section 526(a)(3) and thus are not authority for interpreting misrepresentation there to include an intent to deceive.

I agree with the firm that its representation of the services it would perform could have been false and thus a misrepresentation only if, when it made the representation, it knew either that it could not or would perform the services. But the U.S. trustee's allegation of intentional misrepresentation necessarily, albeit implicitly, alleges that the representation of services to be performed was false. The only way that such

---

[30] Motion at 11.
[31] *Id.* at 10.
[32] U.S. v. Alvarez, 567 U.S. 709, 740 n.1 (2012) (dissenting opinion of Justice Alito); motion at 9-10.

a representation could be intentionally false is for the speaker to know that the speaker could not or would not perform. The misrepresentation allegation need not contain any further detail regarding its falsity.

I also conclude that the implicit allegation of falsity is not subject to the particularity requirement of Rule 9(b). That's because the particularity requirement excludes the allegations of the defendant's state of mind. Here, the allegation at issue is that the firm intentionally misrepresented whether it could or would perform agreed services—facts that, accepting the complaint's allegations, the firm had to know were untrue. Determining whether the representation was in fact false necessarily implicates the firm's state of mind. And the U.S. trustee has otherwise pleaded the misrepresentation claim in compliance with Rules 8 and 9(b) by alleging specifically the representations of services to be performed and the way the representations were demonstrated to be false.

In *Stites,* I did not decide that an agency's misrepresentation whether it would perform services could be addressed only as a failure to perform under section 526(a)(1). I did state that such an allegation would be better addressed under section 526(a)(1), but my holding assumed that the misrepresentation claim was based only on the agency's failure to perform the agreed services, and I did not address the presence or absence of evidence

of the agency's mental state with respect to the accuracy of its representation.[33]

It may emerge during discovery or at trial that the firm honestly believed that its representations were true when it made them. But at the pleading stage, the U.S. trustee has alleged enough to survive a motion to dismiss on this claim.

### 3. Section 526(c)(5)

Finally, the firm argues that the U.S. trustee's allegations are inadequate to support either the intent to violate section 526 or a clear and consistent pattern or practice of doing so. Proof of either of intentional conduct or a pattern or practice is necessary under section 526(c)(5) to warrant a civil penalty.

#### (a) Intent

The firm argues that the allegations of intentional violations are not sufficiently detailed or "plausible" under the *Twombly-Iqbal* standard and thus do not satisfy Rule 8.

In the Ninth Circuit's 2014 decision in *Eclectic Properties East, LLC v. Marcus & Millichap Co.*, it held that a trial court must, in considering the plausibility of a complaint's allegation, "consider an 'obvious alternative explanation' for defendant's behavior."[34] But in its 2011 decision in *Starr v. Baca*, the circuit held that—

---

[33] *Stites*, 2018 WL 1267837, at *13.
[34] 751 F.3d 990 (9th Cir. 2014), quoting *Twombly*, 550 U.S. at 567.

Page 11 – MEMORANDUM DECISION ON DEFENDANTS' MOTION etc.

- the existence of a plausible explanation advanced by the defendant does not require dismissal of a complaint if the plaintiff's explanation is also plausible;

- dismissal is required only when the defendant's plausible alternative explanation is so convincing that the plaintiff's explanation is implausible; and

- the plaintiff's explanation need not be true or even probable to be plausible.[35]

Nothing in *Ecletic* is inconsistent with the earlier *Starr* decision.

It's true that a mental state short of intentionality, such as inadvertence, is an alternative explanation for the firm's behavior in this case. But the complaint alleges a nearly three-year period in which the firm continually put off either refunding to Lewis the fee she paid or reassigning her file to a lawyer who would comply with the agreement, even to the point of subjecting her unnecessarily to loss of nearly $5,000 in garnished wages. Considering those allegations, it is plausible to infer that the firm failed to perform the agreed services (and misrepresented whether it could or would do so) not inadvertently but rather intentionally. I don't find that the alternative explanation of in advertence makes the intentionality theory implausible.

The allegation of intentional violations of sections 526(a)(1) and (3) is plausible.

### (b) Pattern or practice

The U.S. trustee alleges that the firm repeatedly violated section 526 in its representation of Lewis and that this alone constitutes a pattern or

---

[35] 652 F.3d 1202, 1211 (9th Cir. 2011).

Page 12 – MEMORANDUM DECISION ON DEFENDANTS' MOTION etc.

practice. The alleged omissions by the firm can be seen as at least five separate violations, at least of section 526(a)(1):

- The firm failed to immediately, or at least promptly, prepare to file Lewis's chapter 7 petition after she completed her payments on November 14, 2018;

- Perkins failed to contact her or respond to her phone calls—ever—after she paid the fee;

- The firm failed, in response to her multiple notifications of his inaction and her requests for reassignment of her file, to reassign her file to a lawyer who would comply with the agreement;

- The firm failed to honor her request under the agreement to refund the fee that she had paid; and

- The firm failed to respond to her notice of the impending garnishment in time to prevent the garnishment.

Each of Lewis's multiple contacts to the firm in response to which it failed to perform agreed services is a separate violation, so the total number of alleged violations exceeds five.

The firm questions whether a "*single* representation of a *single* client in connection with a *single* bankruptcy case" can ever satisfy the pattern-or-practice requirement. In other words, the firm argues that, regardless of how many times an agency violates section 526 with respect to one client, the violations can never constitute a pattern or practice. The firm cites no cases interpreting "pattern or practice" in section 526(c)(5). And its argument does not square with the language of section 526(c)(5). Nothing there suggests that the relevant pattern or practice "of violating this section" should be

determined by counting injured clients, rather than individual violations, even if injuring only one client.

The case law on which the firm relies does not foreclose treating at least five statutory violations against a single victim as a clear and consistent pattern or practice of violations.

The U.S. trustee also alleges that it "is informed and alleges" that the firm has engaged in a pattern or practice of misconduct, implying that it is relying on alleged misconduct in other cases involving clients other than Lewis.[36] In its responsive brief, the U.S. trustee has offered some more detail about this allegation, including citations to other bankruptcy cases in which it has found fault with the firm's practices.[37] I agree with the firm that I cannot consider extra-complaint allegations to support a plaintiff's defense of a motion to dismiss.

I will deny the motion to dismiss the second claim.

### B.  Third claim: violations of LR 83-7

In the third claim, the U.S. trustee requests imposition of "a monetary sanction in the amount of $4,686.11, payable to Lewis," for violation of unspecified Oregon Rules of Professional Conduct and this district court's Local Rule 83-7. That rule requires that lawyers practicing in this district "comply with the Oregon Rules of Professional Conduct and [the district]

---

[36] Complaint ¶ 45.
[37] ECF No. 17 at 6.

Page 14 – MEMORANDUM DECISION ON DEFENDANTS' MOTION etc.

Court's the Statement of Professionalism[.]" That rule applies in this court through LBR 9010-1(a)(2).

I agree with the firm that neither LR 83-7 nor the ORPCs create a right of action in favor of the U.S. trustee to seek a monetary sanction payable to a third party. LR 83-7 is a vehicle for exercising a court's customary power and responsibility to govern the practice of law before it. But a local rule cannot—and this rule doesn't purport to—expand any substantive right or duty imposed by positive law.

As the firm correctly argues, the ORPCs are not enforceable through a civil action.[38] Even if the ORPCs did create a private right of action, there would be doubts about the jurisdiction of a bankruptcy court to adjudicate that hypothetical state-law action. It would also be doubtful at best that the U.S. trustee has constitutional standing to allege such a claim for the sole benefit of a private person who is not even a party to this action.

I don't question that the ORPCs and LR 83-7 would be relevant if I were to exercise my supervisory authority to discipline a member of the court's bar. But a civil action by the U.S. trustee seeking damages—the U.S. trustee prefers the term "sanctions" but there is no meaningful difference in this context—payable to a nonparty is not the vehicle for that kind of proceeding.

---

[38] Welsh v. Case, 43 P.3d 445, 452 (Or. App. 2002) (disciplinary rules do not create a right of action but may inform the standard of care in a tort case); Bob Godfrey Pontiac, Inc. v. Roloff, 630 P.2d 840, 847 (Or. 1981) (same result under Code of Professional Responsibility).

Page 15 – MEMORANDUM DECISION ON DEFENDANTS' MOTION etc.

I will dismiss the third claim.

### C. Fourth claim: inherent authority

Like the third claim, the fourth and final claim seeks imposition on defendants of a monetary sanction of $4,686.11 payable to Lewis. This time, the U.S. trustee invokes the court's inherent authority, alleging that defendants ignored her pleas for assistance, her requests for a new lawyer to represent her, and her requests for a refund of her fees paid and did those things willfully and in bad faith.

The firm argues that such a sanction is neither authorized nor warranted. Much of its briefing on this subject is dedicated to the argument that the Supreme Court's 2014 decision in *Law v. Siegel*[39] and related decisions prohibit the use of inherent authority in a way that is inconsistent with the Bankruptcy Code. But the nonstatutory sanction for misconduct that *Law v. Siegel* disapproved of—the "surcharging" of a debtor's homestead exemption to pay administrative expenses—was not just unauthorized by the Code; it was expressly forbidden.[40]

The Supreme Court in *Law* did reaffirm the rule that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code."[41] But so far at least, lower

---

[39] 571 U.S. 415 (2014).
[40] *Id.* at 421 ("a statute's general permission to take actions of a certain type must yield to a specific prohibition found elsewhere").
[41] *Id.* (internal quotations marks and citation omitted).

courts have not understood this to mean that bankruptcy courts, uniquely among federal courts, are forbidden to exercise inherent judicial powers. The firm seems to acknowledge this and doesn't argue that this court lacks inherent authority to impose sanctions; it instead argues that, because the Bankruptcy Code **does** provide for certain kinds of sanctions, it implicitly forbids the use of inherent authority to impose sanctions.

In the Supreme Court's 1991 decision in *Chambers v. NASCO, Inc*,[42] it held both that, "when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power," and "if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power."[43]

Still, I must use some caution in interpreting *Chambers*. It could be taken to mean that there is literally nothing that is beyond the sanctioning power of a federal court—if a rule or statute governs, the court imposes sanctions under the rule or statute, and if no rule or statute governs, the court instead invokes its inherent authority and imposes sanctions anyway. But that can't be what the *Chambers* Court meant, because it would be inconsistent with countless other decisions recognizing that there are many things a federal court can't do, even when it comes to sanctioning bad-faith litigation

---

[42] 501 U.S. 32 (1991).
[43] *Id*. at 50.

Page 17 – MEMORANDUM DECISION ON DEFENDANTS' MOTION etc.

misconduct. (*Law v. Siegel* is one example.) The *Chambers* Court must have meant that, when a court wishes to sanction misconduct **of a kind that courts have traditionally had the power to regulate**, it may do so with or without the help of a rule or statute.[44]

The question, then, is whether the "sanction" the U.S. trustee requests is consistent with the traditional scope of inherent judicial power. The general categories of inherent power that the *Chambers* Court acknowledged are—

- the power to control admission to practice before the court and to discipline attorneys;

- the power to punish contempt, whether interference with a judicial proceeding or intentional disobedience to a court order;

- the power to vacate a judgment that was procured by fraud; the power to exclude a disruptive litigant from the courtroom;

- the power to dismiss an action filed in an inconvenient forum; and

- the power to require a litigant to pay its opponent's attorney fees under narrowly defined circumstances.

The Court did not purport to give an exhaustive list, but these categories are at least illustrative of the kinds of things a court can do with its inherent power. The U.S. trustee's request for sanctions doesn't fit into or even resemble any of these categories. It might seem to be related to the first category, the power to regulate and discipline members of the bar, but it really isn't. The "sanction" the U.S. trustee requests under my inherent power is that I order the firm to pay $4,686.11 to Lewis. I don't know exactly

---

[44] *See id.* at 43-46 (discussing historical and customary scope of inherent powers).

Page 18 – MEMORANDUM DECISION ON DEFENDANTS' MOTION etc.

how that amount was determined, but it may be the amount that a creditor allegedly garnished from her wages during the lengthy delay between her payment of fees to the firm and the time that it finally filed her bankruptcy petition. I must assume that U.S. trustee's requested "sanction" is intended to compensate her for the damages she suffered as the alleged result of the firm's delay in filing her bankruptcy case. In other words, it is equal to the damages that she would probably request if she were to sue the firm for legal malpractice.

Whatever other function inherent-power sanctions might be thought to serve, they should not be allowed to substitute for a run-of-the-mill malpractice action under state law. Allowing inherent-power sanctions to be used in that way would greatly expand federal-court jurisdiction and would effectively federalize the law of legal malpractice, at least when the malpractice has some connection with federal litigation. I'm not aware of any authority for such an expansion, and I conclude that it is unwarranted.

I will dismiss the fourth claim.

## V. Conclusion

I will enter a minute order denying the motion as to the second claim and granting it to dismiss the third and fourth claims.

# # #